# SPEIR v. UNITED STATES TO THE USE OF THE TRADESMEN'S TRUST CO.

GOVERNMENT CONTRACTS; PUBLIC WORK; BONDS; SOLDIERS' HOME.

1. The Board of Commissioners of the Soldiers' Home in the District of Columbia, are neither officers of a corporation, nor trustees of an independent trust, but are officers of the United States, acting as agents of the United States in the management of a public establishment of a special character; and buildings erected for the home are public buildings, and in making contracts therefor the commissioners act as agents and representatives of the United States.

2. A contract between a builder and the Board of Commissioners for and on behalf of the United States Soldiers' Home, signed by the Board of Commissioners by the president of the Board, for the erection of a building on the Soldiers' Home grounds in the District of Columbia, is a contract with the United States for the erection of a public building, within the meaning of the act of Congress of August 13, 1894 (28 Stat. at L. 278, chap. 280, U. S. Comp. Stat. 1901, p. 2523); and, while such a contract should be in the name of the United States acting through its agents, the Board of Commissioners, the fact that, through inadvertence the United States are not named in the contract, does not change its essential character. (Following *Peake* v. *United States*, 16 App. D. C. 415, and citing *United States use of Vermont Marble Co.* v. *Burgdorf*, 13 App. D. C. 506.)

3. Where, through mistake, the bond given by the contractor for erecting a building in the Soldiers' Home grounds in this District, to pay for all material and labor supplied him in the prosecuton of the work, runs to the commissioners of the home, instead of to the United States, such a mistake will not defeat a recovery on the bond by persons supplying such material and labor, for whose protection the act of Congress of August 13, 1894 (28 Stat. at L. 278, chap. 280, U. S. Comp. Stat. 1901, p. 2523), requires such bonds to be given. (Citing *Whelpley* v. *Ross*, 25 · App. D. C. 207.)

No. 1894. Submitted May 7, 1908. Decided June 2, 1908.

HEARING on an appeal, specially allowed, from an order of the Supreme Court of the District of Columbia, overruling a demurrer to a declaration on a bond. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action begun on May 23, 1907, in the name of the United States to the use of the Tradesmen's Trust Company, upon a bond given to secure the performance of a contract by William E. Speir for the erection of a building on the Soldiers' Home grounds in the District of Columbia.

The declaration, in several counts, alleged the following facts: That, on November 21, 1903, William E. Speir entered into a formal contract with the United States, acting by and through the Board of Commissioners of the Soldiers' Home, to furnish all the labor and material required for the complete construction of the addition to the Barnes Hospital at the United States Soldiers' Home. Said contract, attached to the declaration, recites that it was entered into by and between said Speir and the Board of Commissioners for and on behalf of the United States Soldiers' Home. The said Speir undertook to complete the said building for the sum of $184,891. The contract was signed by said Speir, and, for the Board of Commissioners, by H. S. Hawkins, "Brigadier General, Governor, President of the Board," with seals attached. On June 4, 1904, the said Speir, as principal, and the Title Guaranty & Trust Company, of Scranton, Pennsylvania, bound themselves unto the Board of Commissioners of the United States Soldiers' Home in the penal sum of $75,000. The condition of the bond, after reciting the contract aforesaid, reads as follows:

"Now, therefore, if the above-bounded William E. Speir,—heirs executors, or administrators—shall and will, in all respects, duly and fully perform and observe all and singular the covenants, conditions and agreements in and by the said contract agreed and covenanted by the said William E. Speir, to be observed and performed according to the true intent and meaning of the said contract, and as well during any period of extension of said contract that may be granted on the part of the United States Soldiers' Home as during the original term of the same, and shall promptly make full payments to all persons supplying him labor or materials in the prosecution of the work

provided for in said contract, then the above obligation shall be void and of no effect; otherwise, to remain in full force and virtue."

The declaration further alleges that, on December 3, 1903, the said Speir contracted with A. F. McCarthy & Company for the supply of certain materials and labor in the prosecution of the contract aforesaid, agreeing to pay them the sum of $40,000. That the Tradesmen's Trust Company became surety to said Speir for the said A. F. McCarthy & Company for the faithful performance of said contract by the latter. That in August, 1904, the said A. F. McCarthy & Company made default and abandoned the said contract. That, at request of said Speir, and in performance of its obligation aforesaid, the said Tradesmen's Trust Company carried out and completed the contract of said McCarthy & Company, expending therein the sum of $22,492.15. That the balance of $17,507.85 remains due by said Speir on account of said contract. And that, the said Speir having failed and refused to pay the same, a certified copy of the bond given by him as aforesaid was procured for the institution of this suit against him and his surety therein, the Title Guaranty & Trust Company, of Scranton, Pennsylvania.

The defendants demurred to this declaration. Their demurrers were overruled, and a special appeal from the order overruling the same has been allowed.

*Mr. Philip Walker* for the appellants.

*Mr. Nathaniel Wilson* and *Mr. Clarence R. Wilson* for the appellees.

Mr. Chief Justice Shepard delivered the opinion of the Court:

The act approved August 13, 1894, in accordance with which it is alleged the bond sued upon was required and executed, reads as follows: "Hereafter any person or persons entering into a formal contract with the United States for the con-

struction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor and furnishing affidavit to the Department under the direction of which said work is being, or has been, prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of said contract and bond, upon which said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit, * * * and to prosecute the same to final judgment and execution: *Provided,* That such action and its prosecutions shall involve the United States in no expense." [28 Stat. at L. 278, chap. 280, U. S. Comp. Stat. 1901, p. 2523.]

1. The first proposition of the appellants is thus stated: "The contract secured by the bond is not 'a formal contract with the United States for the erection of a public building, or the prosecution and completion of a public work.'" We are of the opinion that this contention is not well founded.

The Soldiers' Home was provided for by act of Congress approved March 3, 1851. By act of March 3, 1847, $500,000 had been appropriated for the return of disabled and indigent soldiers of the Mexican War, of which there remained, unexpended, the sum of $55,000. This sum, and $118,791.19, that had been levied by General Scott upon the city of Mexico, and paid into the Treasury of the United States, were appropriated as a fund for the establishment of the home. Subsequent laws added to this fund monthly deductions from soldiers' pay, and the proceeds of fines and forfeitures of pay under decrees of

courts martial. By act of 1883, all funds of the home not needed for current use were required to be deposited in the United States Treasury, to the credit of the home, as a permanent fund, and to draw interest at the rate of 3 per cent per annum. No part of the principal fund can be withdrawn save by resolution of the Board of Commissioners, stating the necessity, with the approval of the Secretary of War. The officers of the home consist of officers of the Army selected by the President. This Board of Commissioners is required to make annual reports to the Secretary of War, giving a full statement of all receipts and disbursements, which shall be supplemented by other statements if required by the Secretary, and all shall be transmitted to Congress.

Section 4817, Rev. Stat., U. S. Comp. Stat. 1901, p. 3330, authorized the Board of Commissioners, with the approval of the President, to procure a site for the home, and to have buildings erected for the uses of the same. The act of March 3, 1883, amended this by providing that no new building shall be erected, or additional ground purchased, nor any expenditure exceeding $5,000 be made, until the action of the board shall be approved by the Secretary of War.

The act of January 16, 1891, authorizes the Treasurer of the United States to receive and keep, subject to checks of the treasurer of the home, all funds then under control of the treasurer of the home, or that may hereafter be furnished, or in any manner come into his possession for use in defraying the current expenses of maintenance. The title to the land on which the building is situated is in the United States. Relating to this question of taking title to the lands for the Soldiers' Home, Attorney General Crittenden, on July 12, 1851, gave an opinion to the Secretary of War in which he said: "In my opinion the commissioners are not a corporation. They cannot sue or be sued. They are but *public* officers and agents to administer the funds appropriated by the act, and to raise funds out of the deductions of pay of noncommissioned officers, musicians, artificers, and privates in the Army, and out of any donations of moneys or property made by any person or persons for the benefit of the

asylum, and for the uses, purposes, and charities expressed in
the act. They are like the former Commissioners of the Sink-
ing Fund, the Commissioners of Indian Affairs, Commissioners
of Pensions, or Commissioners of the Public Buildings. This
asylum is a *public establishment,* under the control of the gov-
ernment, acting by the Secretary of War.

"The deed for the site purchased for the asylum should be
taken to the United States." 5 Ops. Atty. Gen. 398.

We have no doubt of the soundness of this opinion, and there
has been no subsequent legislation changing the conditions then
existing. The Board of Commissioners of the Soldiers' Home
are neither officers of a corporation, nor trustees of an independ-
ent trust, but officers of the United States acting as their agents
in the management of a public establishment of a special char-
acter.

The buildings erected for the home are, therefore, public
buildings, and, in making contracts therefor, they act as the
agents and representatives of the United States. The statutes
regulating the erection of public buildings generally, that are
relied on by the appellants as determining what are public
buildings of the United States (Rev. Stat. secs. 3663, 3733,
3734, and 5503, U. S. Comp. Stat. 1901, pp. 2436, 2505, 2506,
3710), have no application to buildings erected on the grounds
of Soldiers' Home, which are provided for by other statutes, and
paid for, not out of special appropriations of public money, but
out of funds permanently appropriated by Congress for the
maintenance of the home.

The proper form of this contract should have been in the
name of the United States, acting through its agents, the Board
of Commissioners, as was the case in the contract that was in-
volved in *United States use of Vermont Marble Co.* v. *Burg-
dorf,* 13 App. D. C. 506, 507. But the fact that, through in-
advertence, the United States were not named in the contract,
does not, in our opinion, change its essential character. The
Board of Commissioners, as public agents, were acting by legal
authority in the line of their duty as such, and not for them-
selves. Their contract was on account of, and for the benefit of,

the United States, which they represented. *Hodgson* v. *Dexter,* 1 Cranch, 345, 363, 2 L. ed. 130, 136; *Peake* v. *United States,* 16 App. D. C. 415, 420; *Sheets* v. *Selden,* 2 Wall. 177, 187, 17 L. ed. 822, 825. Both contracting parties fully understood that the building to be erected was a public building of the United States. For that reason the Board of Commissioners exacted, and the contractor and his surety executed, the bond for the protection of the furnishers of labor and material required in all such cases by the act of August 13, 1894.

2. The bond, which is under seal, follows the form of the contract and names the Board of Commissioners as obligees, and not the United States. For this reason, it is contended that an action does not lie thereon in the name of the United States. It is the rule of law in this District that in the case of a private bond under seal, a person not a party thereto, though it may have been intended for his benefit, cannot maintain an action at law thereon. *Willard* v. *Wood,* 135 U. S. 309, 313, 34 L. ed. 210, 213, 10 Sup. Ct. Rep. 831; *Whelpley* v. *Ross,* 25 App. D. C. 207, 214.

But this is not the case of a contract between private persons, and an ordinary bond to secure its performance, determinable by the terms in which their intention has been expressed, and the ancient rule of the common law above stated. The building contracted for was a public one on which no lien could be fastened. The contractor and his surety knew this, and that they were dealing, in fact, with the United States through their agents. They intended to give the bond required by the statute in all such cases. This bond was required not only for the security of the United States, but also for the protection of third persons who might thereafter furnish labor and material to the contractor, for which they could have no lien upon the building. These persons had nothing to do with the form of the bond. Their rights accrued later, and are founded in the statutory provision for their security. So far as their rights are concerned, the obligees are not named because of any interest the United States might have, but simply that there might be a promisee in whose name an action might be brought, if necessary there-

after, on behalf of the real parties in interest, who might furnish labor and materials to the contractor, in reliance upon the statutory provisions for their security.

The defense on the ground that the United States were not expressly named as the obligees is a purely technical one. By the terms of the statute they should have been named as principals in the contract and obligees in the bond. Notwithstanding their omission, by mistake on the part of their representatives in the transaction, the statutory condition must be considered as read into and made a part of the bond. *State use of United States School-Furniture Co.* v. *McGuire,* 46 W. Va. 328, 331, 76 Am. St. Rep. 822, 33 S. E. 313. By the terms of the statute, the United States should have been formally named as principals in the contract and obligees in the bond. The recitals of both and the very object of their execution plainly show that the omission of the name of the United States was a simple mistake. A distinction between such a bond and one executed to private persons, in respect of the right to use the name of the intended obligee as real or nominal plaintiff, seems to be established by authority. *Ihrig* v. *Scott,* 5 Wash. 584, 585, 32 Pac. 466. In that case a bond securing a contract for the erection of a school building, containing a condition required by statute for those furnishing labor and materials to the contractor, had been made payable by mistake of the school directors to them instead of the State. In passing upon a similar objection to that made in this case, the court said: "That a mistake in the naming of the obligee is not a fatal defect in a bond which is executed pursuant to the requirements of a statute in the interests of the public, when, notwithstanding such error, it clearly appears from the bond, taken as a whole, that it was intended to be such a one as is required by the statute, is fully established by the authorities *State* v. *Wood,* 51 Ark. 205, 10 S. W. 624; *Bay County* v. *Brock,* 44 Mich. 45, 6 N. W. 101. The simple fact, then, of the want of a proper obligee in this bond is not fatal to it, if from its terms the object for which it is executed appears. Even a superficial examination will show such to be the fact. No one can read the bond in the light of the statute above referred to

without at once coming to the conclusion that, in executing it by the principal and sureties, and the acceptance thereof by the proper officers of the school district, there was an intention on the part of all to provide the security required by said statute, in the interests of such as might thereafter, by virtue thereof, become entitled to protection."

The appellee in this case had the right to rely, as it did, upon the condition which the statute required to be incorporated in the bond. It was not a party to the original undertaking, and had nothing to do with the formal mistake.

The contract and bond containing the condition important to it having been approved by the Secretary of War as required by law, it naturally supposed that it was in conformity with all the requirements of the law. The contractor and his surety evidently executed the bond under that belief, and with that object. To exempt them from liability to perform their express obligation, and to deny the appellee its unquestioned statutory right, on account, solely, of this informality or mistake of the bond in respect of naming the proper obligees in whose name alone the action can be prosecuted under the statute, would be an act of great injustice that ought not to be tolerated. As was said by Judge Cooley in an analogous case approved and relied upon in *Ihrig* v. *Scott, supra*: "The obligee is not named because of any interest in the condition, but merely that there may be a promisee in whose name to bring suit; nothing of importance depends upon its being the State rather than the county; the condition is the important requirement, and the naming of an obligee is the merest formality possible, so that, if the instrument omitted to name one,  *  *  *  the substance of the undertaking would still remain." *Bay County* v. *Brock,* 44 Mich. 45, 48, 6 N. W. 101.

We are of the opinion that the court below did not err in overruling the demurrer; and the order to that effect will be affirmed with costs, and the cause remanded for trial in due order of proceeding. It is so ordered.                    *Affirmed.*